## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

**GREATGIGZ SOLUTIONS, LLC,**

Plaintiff

v.

**NEXTCARE HOLDINGS, INC.,**

Defendant

**Case No. 6:21-cv-01207**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against NextCare Holdings, Inc. ("Defendant" or "NextCare"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.  GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.  Upon information and belief, NextCare is a corporation organized and existing under the laws of Delaware, with a principal place of business located 1138 N. Alma School Rd., Suite 120, Mesa, Arizona 85201. NextCare may be served through its registered agent in the State of Texas at Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

3.  Upon information and belief, NextCare sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

systems into the stream of commerce knowing and intending that they would be extensively used in the State of Texas and in this judicial District.  Upon information and belief, NextCare specifically targets customers in the State of Texas and in this judicial District.

### JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

5.    This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and apps) its services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.

6.    Upon information and belief, Defendant maintains regular and established places of business in the State of Texas and specifically within this District, which is illustrated by the fact that NextCare maintains multiple offices throughout the state of Texas, including in the Western District of Texas. (See Figures 1 and 2 below, which are screenshots from Defendant's website).



Figure 1[1]



Figure 2[2]

---

[1] Source, as visited on September 18, 2021: https://nextcare.com/locations/tx/waco-lacy-lakeview/
[2] Source, as visited on September 10, 2021: https://nextcare.com/locations/tx/waco-hewitt/

7.    Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).  As noted above, Defendant maintains regular and established places of business in this District.

## PATENTS-IN-SUIT

8.    GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194 Patent"); 7,490,086 ("the '086 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the '000 Patent") (hereinafter collectively referred to as "the GGS Patents").

9.    The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

10.   The inventions described and claimed in the GGS Patents were invented by Raymond Anthony Joao.

11.   The priority date of each of the GGS Patents is at least as early as July 31, 1999.

12.   The GGS Patents each include numerous claims defining distinct inventions.

13.   During prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the pending claims are directed to an abstract idea and there would be no preemption of the abstract idea or the field of the abstract idea.

14.   GreatGigz Solutions, LLC alleges infringement on the part of Defendant of the '194 Patent and the '086 Patent (the "Asserted Patents").

15.   The '194 Patent relates generally to an apparatus and method for providing recruitment information, including a memory device for Storing information regarding at least one of a job

opening, a position, an assignment, a contract, and a project, and information regarding a job Search request, a processing device for processing information regarding the job Search request upon a detection of an occurrence of a Searching event, wherein the processing device utilizes information regarding the at least one of a job opening, a position, an assignment, a contract, and a project, Stored in the memory device, and further wherein the processing device generates a message containing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, wherein the message is responsive to the job Search request, and a transmitter for transmitting the message to a communication device associated with an individual in real-time. *See* Abstract, '194 Patent.

16. The '086 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processing the information regarding a job search request or inquiry upon an automatic detection of an occurrence of a searching event which is an occurrence of a job posting, a posting of new or revised data or information, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an to fill a position, or an event which creates an interest to seek a position, and generates a message, containing the information regarding a job opening, position, assignment, contract, or project, responsive to the job search request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual. *See* Abstract, '086 Patent.

17. As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999. At that time, the idea of launching NextCare.com was still several years away.

18.   Likewise, as of the priority date in July 1999, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Among other things, as of the priority date, "[t]he enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, can be costly and can lead to job search efforts and/or recruitment efforts which may be limited in breadth and/or scope by the personal and/or individual contacts, limitations and/or constraints associated with the employment agency, recruiter, so-called 'headhunter', employment and/or career consultant, temporary employment agency, personal agent, personal manager, and/or other intermediary." *See* '194 Patent at 2:7-17.  The deficiencies in the art as of the date of invention deprived individuals and employers from being able to obtain introductions to the best possible candidates.  *Id.* at 2:18-24.  Still further, as of the date of invention, job search efforts were limited by a multitude of factors, and the available resources (*e.g.,* employment agencies) could not overcome such limitations.  *Id.* at 2:26-42.  The inventions as claimed overcome the deficiencies in the art by establishing an unconventional central clearinghouse for job searching services.  *Id.* at 3:25-34.  Such clearinghouse is embodied and claimed in the form of the central database, which contains all pertinent information concerning both employers and individual job seekers.  *Id.* at 14:28-45.  Again, the inventions as claimed capture a technological solution to the deficiencies in the art by eliminating the need to rely upon interpersonal relationships as a limiting factor in job searching.

19.   In addition, as of the date of invention in July 1999, the job search process was inefficient and unsatisfactory, especially when the parties requested additional information or were not adequately informed as to the needs and demands of a counterpart.  *See* '194 Patent at 2:43-62.  The inventions as claimed overcome these problems in the art by providing an unconventional

links to data and information pertinent to the job search activities of users. *Id.* at 7:22-28. Such links unconventionally allowed users to access information external to the central processor. *Id.* at 16:8-19. Such links also permitted enhanced communication among employers and job seekers. *Id.* at 20:36-44. The unconventional approach was a substantial advancement over the state of the art, including because it allowed users to obtain additional information and conduct research without interrupting the processing of the central processor. *Id.* at 24:59-25:6.

20. In addition, as of the date of invention in July 1999, confidentiality and anonymity were difficult to maintain among participants. *See* '194 Patent at 2:62-3:8. The inventions as claimed overcame these deficiencies in the art by providing unconventional enhanced confidentiality during job search interactions. *Id.* at 10:9-15; 16:1-6. As of the date of invention, the conventional approach lacked any privacy controls. *See, e.g., https://www.smartrecruiters.com/blog/the-history-of-job-ads/.*

21. The inventions as claimed provide a technological solution to the technological problems in the industry as of the date of invention. For example, the inventions provide an unconventional specially programmed central processor (or processing computer) linked to both employer and individual computers. *See* '194 Patent at 13:52-61. Such an unconventional architecture allowed for the "direct or indirect bi-directional communication between an individual computer and an employer computer." *Id.* at 13:57-61. As of the date of invention, such architectures were not routine and were unconventional. Indeed, the novel architecture enhanced the operation and functionality of computers as useful tools by modifying the traditional and expected flow of data between employers and job seekers. The novel architecture includes the specific claimed transmitters and receivers for carrying out the bi-directional communications among employers and individuals. *Id.* at 14:19-27. Further, the unconventional clearinghouse

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT 7

central processor is located such that it can be updated via inputs from both the employer and individual job seeker. *Id.* at 17:57-67. Again, this architecture was unconventional in the job placement/search field, which at the time of invention was conventionally limited to static and "relatively primitive" job listings. *See https://www.smartrecruiters.com/blog/the-history-of-job-ads/.* Such listings did not provide a reasonable means for employers to interact with job seekers. *Id.*

22.     Still further, the inventions as claimed provide for the inclusion of work scheduling information as an integral component of the job search. *See* '194 Patent at 16:20-32. As described and claimed, an employer can utilize the work scheduling information to reserve or engage the services of an individual for specific dates and times as needed by the employer. *Id.* at 33:53-67. As of the date of invention in July 1999, such service and technological solution was unconventional and not routine. Indeed, the invention as claimed is what permitted the eventual rise of the "gig economy" as is now commonly exploited by providers such as Uber (which did not exist until 2010). The so-called modern "gig economy" did not emerge until the financial crisis of 2008. *See, e.g., https://www.businessnewsdaily.com/10359-gig-economy-trends.html.*

23.     In addition, the inventions as claimed provide a technological solution to the deficiencies in the art by facilitating the hiring process as between an employer and an individual job seeker. *See* '194 Patent at 26:12-28:14. The conventional art as of the date of invention did not embody the inventive architecture and was thus unable to carry out such communications among the participants.

24.     The deficient state of the art is additionally described in the contemporaneous specification for United States Patent No. 6,457,005 (assigned to hotjobs.com), which has a priority date of June 17, 1999. As explained in the '005 Patent, the use of computers in the job search field at the

time was deficient because it lacked the bi-directional communication capability of the Asserted Patents. *See* '005 Patent at 1:30-40 (describing state of the art as merely allowing static search of employment databases). Still further, the '005 Patent confirms the fact that referral programs and recruiting services at the time were deficient and limited by interpersonal relationships. *Id.* at 1:41-55. Just as with the claims of the Asserted Patents, the inventors of the '005 Patent endeavored to provide a solution to the recognized problem of matching resources to entities with need. *Id.* at 1:62-65.

25. The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas. Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

26. Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

27. Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

28. The '194 Patent was examined by Primary United States Patent Examiner Franz Colby. During the examination of the '194 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

29. After conducting a search for prior art during the examination of the '194 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii) 5,832,497, 11/1998, Taylor; (iii) 5,884.270, 3/1999, Walker et al.; (iv) 5,884.272, 3/1999, Walker et al.; (v) 5,978,768,

11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001, Callen et al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x) 6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

30.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is presumed that Examiner Colby used his or her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Colby has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

31.    The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

32.    After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003, Bukow; (viii) 6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

33.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

34.   The claims of the Asserted Patents are properly issued, valid, and enforceable.

## THE ACCUSED INSTRUMENTALITIES

35.   Upon information and belief, Defendant provides a web platform hosted on a server (www.nextcare.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides health care services through NextCare locations. *See* Figures 3 and 4 below, which are screenshots from Defendant's website. Defendant also utilizes a web platform provided by SolvHealth to allow its customers to schedule an appointment for health care services via NextCare's web platform and SolvHealth's web platform, which together provide recruitment information. Collectively, all of the foregoing comprise the "Accused Instrumentalities."



Figure 3[3]



Figure 4[4]

### COUNT I
### Infringement of U.S. Patent No. 6,662,194

36.    Plaintiff incorporates the above paragraphs by reference.

37.    Defendant has been on actual notice of the '194 Patent at least as early as the date it received

service of the Original Complaint in this litigation.

---

[3] Source, as visited on September 18, 2021: https://nextcare.com
[4] Source, as visited on September 18, 2021: https://nextcare.com/what-we-treat/

38.   Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

39.   Upon information and belief, Defendant has directly infringed and continues to directly infringe at least claim 25 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

40.   Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.nextcare.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides health care services through NextCare locations. Defendant allows its customers to schedule an appointment for health care services using its web platform and SolvHealth's web platform, which together provide recruitment information.  *See* Figure 5 below, which is a screenshot from Defendant's website. Upon clicking the "Check-In" icon, the customer is presented with the appointment screen shown in Figure 6 below via the SolvHealth platform.



Figure 5[5]



Figure 6[6]

---

[5] Source, as visited on September 18, 2021: https://nextcare.com/locations/tx/waco-lacy-lakeview/
[6] Source, as visited on September 18, 2021: https://www.solvhealth.com/book-online/gd8Pmg#_ga=2.109544902.2146375428.1637187616-1385488035.1637187616

41.     Upon information and belief, the Accused Instrumentalities include a memory device for storing at least one of work schedule information and scheduling information for at least one of an individual, an independent contractor, a temporary worker, and a freelancer. For example, Defendant's servers store and provide work schedule information for individual health care providers ("at least one of an individual, an independent contractor, a temporary worker, and a freelancer") of the Defendant such that the individual health care providers can be notified about scheduled appointments. *See* Figures 5 and 6 above.

42.     Upon information and belief, the Accused Instrumentalities include a receiver for receiving a first request, wherein the first request contains information regarding a request to obtain at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein the first request is received from a first communication device associated with an employer or hiring entity. For example, Defendant's servers receive a first request containing information regarding scheduling information of individual employees (health care providers) of the Defendant when a customer ("employer or a hiring entity ") schedules an appointment using a mobile device, laptop or PC ("a first communication device associated with an employer or hiring entity"). The scheduling information is used to notify individual employees (health care providers) about scheduled appointments. *See* Figures 5 and 6 above.

43.     Upon information and belief, the Accused Instrumentalities include a processing device for processing information contained in the first request, wherein the processing device generates a first message containing the at least one of work schedule information and scheduling information for the at least one of an individual, an independent contractor, a temporary worker,

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                          15

and a freelancer. For example, Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("first message") which contains the work schedule information or the scheduling information of individual health care providers of the Defendant. This timetable is displayed to the customer which allows the customer to then select an appropriate time when the order shall be serviced by the individual employee (health care provider). *See* Figures 5 and 6 above. *See also* Figure 7 below, which shows the screen presented to a customer for finalizing a health care appointment booking.



Figure 7[7]

44.     Upon information and belief, the Accused Instrumentalities further include a transmitter for transmitting the first message to the first communication device. For example, Defendant's servers transmit the first message to the first communication device (used by the customer) via the Internet, causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the "Book it" button). *See* Figure 7 above.

---

[7] Source, as visited on September 18, 2021: https://www.solvhealth.com/submitBooking

45.    Upon information and belief, Defendant provides the receiver wherein the receiver receives a second request, wherein the second request contains information for at least one of reserving, engaging, and requesting, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, wherein at least one of the processing device processes the information contained in the second request and at least one of reserves, engages, and requests, the services of the at least one of an individual, an independent contractor, a temporary worker, and a freelancer, the processing device generates a second message containing information regarding the second request, and the transmitter transmits a second message containing information regarding the second request to a second communication device associated with the at least one of an individual, an independent contractor, a temporary worker, and a freelancer. For example, after the customer selects the date and time of the appointment and finishes the scheduling process (by clicking on the "Book it" button), a second request containing information for reserving, engaging, or requesting, the services of the individual (e.g., a health care provider) is sent to the Defendant's servers. Further, Defendant's servers transmit the second message to a device (e.g., a computer or mobile device) associated with a health care provider (for example, the health care provider's computer or mobile device or the computer or mobile device of an employee at the NextCare location where the health care provider works). *See* Figure 7 above.

46.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                            17

47.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '194 Patent, such infringement is necessarily willful and deliberate.    Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '194 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

48.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others.   Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.   As such, Defendant has been willfully blind to the patent rights of Plaintiff.

49.     Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.   Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

50.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II
## Infringement of U.S. Patent No. 7,490,086

51.     Plaintiff incorporates the above paragraphs by reference.

52.     Defendant has been on actual notice of the '086 Patent at least as early as the date it received service of the Original Complaint in this litigation.

53.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

54.    Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

55.    Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.nextcare.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides health care services through NextCare locations. Defendant allows its customers to schedule an appointment for health care services using its web platform and SolvHealth's web platform, which together provide recruitment information.  *See* ¶ 40 above.

56.    Upon information and belief, the Accused Instrumentalities include a memory device, wherein the memory device stores information regarding an individual available for at least one of applying for and interviewing for at least one of a job, a job opportunity, and a hiring need, and further wherein the memory device stores information regarding a recruitment search request or inquiry. For example, Defendant's servers store and provide work schedule information for individual health care providers ("at least one of an individual, an independent contractor, a temporary worker, and a freelancer") of the Defendant such that the health care providers can be notified about scheduled appointments. *See* ¶ 41 above.

57.    Upon information and belief, the Accused Instrumentalities include a processing device, wherein the processing device processes the information regarding a recruitment search request or inquiry upon a detection of an occurrence of a searching event, wherein the searching event is an occurrence of at least one of a job posting by at least one employer or at least one hiring entity, a posting of new or revised data or information from at least one individual or a group of individuals, a news release of a business event, an employment-related event, an economic

report, industry-specific news, an event which creates an interest by at least one employer or at least one hiring entity to fill a position, and an event which creates an interest by at least one individual to seek a position, wherein the processing device automatically detects the occurrence of the searching event, wherein the processing device utilizes the information regarding an individual stored in the memory device in processing the information regarding a recruitment search request or inquiry, and further wherein the processing device generates a message containing information regarding the individual, wherein the message is responsive to the recruitment search request or inquiry. For example, Defendant provides a web portal which allows its customers to schedule an appointment for health care services ("occurrence of at least one of a job posting by at least one employer or at least one hiring entity… an event which creates an interest by at least one employer or at least one hiring entity to fill a position"). The portal presents to a customer a plurality of fields (including but not limited to the reason for the customer's proposed visit, the customer's name and contact information, the customer's insurance information) which allow the customer to enter relevant details about their proposed visit. Defendant's servers receive, store (using a memory device) and use the customer details to calculate to schedule an appointment for health care services. Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("message") which contains the work schedule information or the scheduling information ("information regarding an individual") of individual employees of the Defendant. This timetable helps the customer to select an appropriate time for their health care appointment. *See* ¶ 43 above.

58.     Upon information and belief, Defendant's Accused Instrumentalities include a transmitter, wherein the transmitter transmits the message to a communication device associated with an employer or hiring entity. For example, Defendant's servers transmit the first message to the first

communication device (used by the customer) via the Internet, causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the Submit button). *See* ¶ 44 above.

59. The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

60. To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '086 Patent, such infringement is necessarily willful and deliberate.   Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '086 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

61. On information and belief, Defendant has a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

62. Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.   Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

63. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT III
## Infringement of U.S. Patent No. 9,760,864

64.     Plaintiff incorporates the above paragraphs by reference.

65.     Defendant has been on actual notice of the '864 Patent at least as early as the date it received service of the Original Complaint in this litigation.

66.     Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

67.     Upon information and belief, Defendant has directly infringed at least Claim 1 of the '864 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

68.     Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.nextcare.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides health care services through NextCare locations. Defendant allows its customers to schedule an appointment for health care services using its web platform and SolvHealth's web platform, which together provide recruitment information.  *See* ¶ 40 above.

69.     Upon information and belief, the Accused Instrumentalities include a memory device or a database, wherein the memory device or the database stores work schedule information or scheduling information of or for a plurality of individuals, independent contractors, temporary workers, or freelancers. For example, Defendant's servers store and provide work schedule information for individual health care providers ("at least one of an individual, an independent contractor, a temporary worker, and a freelancer") of the Defendant such that the individual health care providers can be notified about scheduled appointments. *See* ¶ 41 above.

70.     Upon information and belief, the Accused Instrumentalities include a receiver, wherein the receiver receives a first request, wherein the first request contains information regarding a

request to obtain work schedule information or scheduling information of or for an individual, an independent contractor, a temporary worker, or a freelancer, from among the plurality of individuals, independent contractors, temporary workers, or freelancers, wherein the first request is received from a first communication device associated with an employer or a hiring entity. For example, Defendant's servers receive a first request containing information regarding scheduling information of individual employees (health care providers) of the Defendant when a customer ("employer or a hiring entity ") schedules an appointment using a mobile device, laptop or PC ("a first communication device associated with an employer or hiring entity"). The scheduling information is used to notify individual employees (health care providers) about scheduled appointments. *See* ¶ 42 above.

71.     Upon information and belief, the Accused Instrumentalities include a processor, wherein the processor is associated with a website, and further wherein the processor is specially programmed to process or to provide job search information, recruitment information, or recruitment-related information, wherein the processor processes information contained in the first request, wherein the processor or the apparatus generates a first message in response to the first request, and wherein the first message contains the work schedule information or the scheduling information of or for the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers (processor), in response to the customer's request for scheduling an appointment (via Defendant's website), generate a timetable ("first message") which contains the work schedule information or the scheduling information of individual health care providers of the Defendant. This timetable is displayed to the customer which allows the customer to then select an appropriate time when the order shall be serviced by the individual employee (health care provider) *See* ¶ 43 above.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    23

72.     Upon information and belief, the Accused Instrumentalities include a transmitter, wherein the transmitter transmits the first message to the first communication device on, over, or via, the Internet or the World Wide Web, wherein the apparatus receives a second request, wherein the second request contains information for reserving, engaging, or requesting, the services of the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers transmit the first message to the first communication device (used by the customer) via the Internet, causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the Submit button). After the customer selects the date and time of the appointment and finishes the scheduling process (by clicking on the Submit button), a second request containing information for reserving, engaging, or requesting, the services of the individual (e.g., a health care provider) is sent to the Defendant's servers. *See* ¶¶ 44 and 45 above.

73.     Upon information and belief, the Accused Instrumentalities process the information contained in the second request and generates a second message containing information regarding the second request, and further wherein the apparatus transmits the second message to a second communication device, wherein the second communication device is associated with the individual, the independent contractor, the temporary worker, or the freelancer. For example, after the customer selects the date and time of the appointment and finishes the scheduling process (by clicking on the Submit button), a second request containing information for reserving, engaging, or requesting, the services of the individual (e.g., a health care provider) is sent to the Defendant's servers. Further, Defendant's servers transmit the second message to a device (e.g., a computer or mobile device) associated with a health care provider (for example,

the health care provider's computer or mobile device or the computer or mobile device of an employee at the NextCare location where the health care provider works). *See* ¶ 45 above.

74. The foregoing infringement on the part of Defendant has caused injury to Plaintiff. The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '864 Patent.

75. To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '864 Patent, such infringement is necessarily willful and deliberate. Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '864 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

76. On information and belief, Defendant has a policy or practice of not reviewing the patents of others. Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendant has been willfully blind to the patent rights of Plaintiff.

77. Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages. Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

78. Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT IV**
**Infringement of U.S. Patent No. 10,096,000**

79. Plaintiff incorporates the above paragraphs by reference.

80.    Defendant has been on actual notice of the '000 Patent at least as early as the date it received service of this Original Complaint.

81.    Upon information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

82.    Upon information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 1 of the '000 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

83.    Upon information and belief, the Accused Instrumentalities comprise an apparatus for providing recruitment information.  For example, Defendant provides a web platform hosted on a server (www.nextcare.com) comprising memory, processors, transmitters and/or receivers through which Defendant provides health care services through NextCare affiliated locations. Defendant allows its customers to schedule an appointment for health care services using its web platform and SolvHealth's web platform, which together provide recruitment information.  *See* ¶ 40 above.

84.    Upon information and belief, the Accused Instrumentalities include a memory device, wherein the memory device stores work schedule information or scheduling information for an employer or a hiring entity, or for an individual, an independent contractor, a temporary worker, or a freelancer. For example, Defendant's servers store and provide work schedule information for individual health care providers ("at least one of an individual, an independent contractor, a temporary worker, and a freelancer") of the Defendant such that the individual health care providers can be notified about scheduled appointments. *See* ¶ 41 above.

85.    Upon information and belief, the Accused Instrumentalities include a receiver, wherein the receiver receives a first request, wherein the first request contains information regarding a

request to obtain work schedule information or scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, wherein the first request is transmitted from a first communication device associated with an employer or hiring entity or associated with an individual, an independent contractor, a temporary worker, or a freelancer. For example, Defendant's servers receive a first request containing information regarding scheduling information of individual employees (healthcare providers) of the Defendant when a customer ("employer or a hiring entity ") schedules an appointment using a mobile device, laptop or PC ("a first communication device associated with an employer or hiring entity"). The scheduling information is used to notify individual employees (healthcare providers) about scheduled appointments. *See* ¶ 42 above.

86.     Upon information and belief, the Accused Instrumentalities include a processing device, wherein the processing device is specially programmed for processing information contained in the first request, wherein the processing device generates a first message containing the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer. For example, Defendant's servers, in response to the customer's request for scheduling an appointment, generate a timetable ("first message") which contains the work schedule information or the scheduling information of individual healthcare providers of the Defendant. This timetable is displayed to the customer which allows the customer to then select an appropriate time when the order shall be serviced by the individual employee (healthcare provider). *See* ¶ 43 above.

87.     Upon information and belief, the Accused Instrumentalities include a transmitter, wherein the transmitter transmits the first message to the first communication device or to a second communication device. For example, Defendant's servers transmit the first message to the first

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                   27

communication device (used by the customer) via the Internet, causing display of the timetable to the customer and allowing the customer to select the date and time of the appointment and finish the scheduling process (by clicking on the Submit button). *See* ¶ 44 above.

88.    Upon information and belief, the Accused Instrumentalities process information contained in a second request, wherein the second request contains information for offering services of the individual, the independent contractor, the temporary worker, or the freelancer, to the employer or hiring entity, or contains information for the employer or hiring entity reserving or requesting the services of the individual, the independent contractor, the temporary worker, or the freelancer, wherein the information contained in the second request is based on the work schedule information or the scheduling information for the employer, the hiring entity, the individual, the independent contractor, the temporary worker, or the freelancer, contained in the first message. For example, after the customer selects the date and time of the appointment and finishes the scheduling process (by clicking on the Submit button), a second request containing information for reserving, engaging, or requesting, the services of the individual (e.g., a health care provider) is sent to the Defendant's servers. Further, Defendant's servers transmit the second message to a device (e.g., a computer or mobile device) associated with a health care provider (for example, the health care provider's computer or mobile device or the computer or mobile device of an employee at the NextCare location where the health care provider works). *See* ¶¶ 45 and 73 above.

89.    The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '000 Patent.

90.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '000 Patent, such infringement is necessarily willful and deliberate.   Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '000 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

91.     On information and belief, Defendant has a policy or practice of not reviewing the patents of others.   Further on information and belief, Defendant instructs its employees to not review the patents of others for clearance or to assess infringement thereof.   As such, Defendant has been willfully blind to the patent rights of Plaintiff.

92.     Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.   Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

93.     Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.      Declaring that Defendant has infringed each of the Asserted Patents;

2.      Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.      Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest; and

4.      Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                    29

## JURY DEMAND

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.


Dated:  November 18, 2021                    Respectfully Submitted


*/s/ René A. Vazquez*
René A. Vazquez
Virginia Bar No. 41988
rvazquez@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
Randall Garteiser
Texas Bar No. 24038912
rgarteiser@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR
GREATGIGZ SOLUTIONS, LLC**